# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**NANCY JO GRUETTNER,**

    **Plaintiff,**

    **v.**                                                                                                                   **Case No. 17-CV-799**

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social Security,**

    **Defendant.**

## DECISION AND ORDER

Nancy Jo Gruettner seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for a period of disability and disability insurance benefits, as well as disabled widow's benefits, under the Social Security Act, 42 U.S.C. § 405(g). For the reasons stated below, the Commissioner's decision is reversed and the case is remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

## BACKGROUND

Gruettner filed an application for a period of disability and disability insurance benefits and for disabled widow's benefits, alleging disability beginning on July 8, 2013, due to vertigo and anxiety. (Tr. 223.) A hearing was held before an Administrative Law Judge on February 2, 2016. (Tr. 503.) Gruettner, represented by counsel, appeared and testified at the hearing, as did Adolf W. Swick, a vocational expert.

In a written decision issued March 3, 2016, the ALJ found Gruettner had no medically determinable impairments. (Tr. 45.) Alternatively, the ALJ found Gruettner had the severe impairment of benign positional vertigo of unknown etiology. (Tr. 46.) The ALJ further found that

Gruettner did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"). (Tr. 47.) The ALJ found Gruettner had the residual functional capacity ("RFC") to perform light work, with the following limitation: no work on ladders, ropes, scaffolding, or unprotected heights; no work around dangerous moving machinery; and frequent ability to climb stairs and ramps, balance, kneel, stoop, crouch, and crawl. (Tr. 47.) The ALJ found Gruettner was capable of performing her past relevant work as a patient services representative and a medical secretary. (Tr. 49.) Thus, the ALJ found Gruettner was not disabled from July 8, 2013 through the date of the decision (March 3, 2016). (Tr. 50.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied the plaintiff's request for review.

## DISCUSSION

### *1.    Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### *2.  Application to this Case*

Gruettner alleges that the ALJ erred in three ways. First, she argues the ALJ erred in finding that she had no medically determinable impairment. Second, Gruettner argues the ALJ improperly weighed the opinion of her treating physician, Dr. Manoj Nayak (an internal medicine doctor). And third, the ALJ erred in assessing Gruettner's subjective complaints. I will address each argument in turn.

#### 2.1  Medically Determinable Impairment

Gruettner argues the ALJ erred in finding she had no medically determinable impairment. In making his finding, the ALJ noted that an "impairment" must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. (Tr. 45.) The ALJ further stated that although the regulations provide that the existence of a medically determinable physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, the regulations further provide that under no circumstances may the existence of an impairment be

-3-

established on the basis of symptoms alone. The ALJ found that although Gruettner was diagnosed with vertigo of unknown etiology with an abnormal gait and benign paroxysmal positional vertigo, unspecified, the evidence did not reflect objective and clinical findings that establish a severe impairment. (Tr. 45-46.) The ALJ alternatively evaluated Gruettner's vertigo "as a severe impairment, which is not disabling." (Tr. 46.)

Gruettner argues the ALJ erred in finding she had no medically determinable impairment despite multiple diagnoses and treatment of vertigo. (Pl.'s Br. at 10, Docket # 15.) Gruettner further takes issue with the ALJ's alternative finding that Gruettner's vertigo was a severe impairment, because the ALJ said, "in the alternative, [I] will also evaluate [Gruettner's] vertigo as a severe impairment, which is not disabling." (Tr. 46.) Gruettner argues that the ALJ conducted an improper analysis of Gruettner's impairments by presuming that the vertigo was not disabling, before conducting an analysis and weighing the evidence. (Pl.'s Br. at 10.)

Under the Social Security Act, an impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by a plaintiff's statement of symptoms. 20 C.F.R. §§ 404.1508, 416.908; Social Security Ruling "SSR" 96-4p; SSR 16-3p.[1] A sign is "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques." 20 C.F.R. § 404.1502(g). Laboratory findings are "one or more anatomical,

---

[1] In his decision, the ALJ cites to SSR 96-4p, which was rescinded effective June 14, 2018 in favor of SSR 16-3p. Gruettner again cites to both SSR 16-3p and SSR 96-4p, and the Commissioner cites to SSR 96-4p. Although neither party specifically argues which ruling is applicable to the issue of medically determinable impairment, given the parties' arguments addressed below on SSR 96-7p, I would assume Gruettner would continue to argue that SSR 16-3p should apply retroactively, and the Commissioner would argue that SSR 96-4p should apply. Because I find it does not change the outcome of my decision and the ALJ will need to use the new ruling on remand, I will not address this apparent conflict further.

physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques. Diagnostic techniques include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X–rays), and psychological tests." 20 C.F.R. § 404.1502(c).

The ALJ found that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment. (Tr. 45.) Specifically, the ALJ found that while Gruettner reported feelings of dizziness and medical providers observed a wide, unsteady gait and ataxia,[2] her neurological examinations were essentially normal and a brain CT and EEG study were normal. (Tr. 45-46.) Interestingly, while the ALJ cites an April 2014 record from Dr. Margo Sherman finding a normal Romberg test,[3] he fails to cite to instances in the record where Gruettner's Romberg tests were abnormal. (Tr. 309, 501.) And while the ALJ cites to the July 2013 consultative examination with Dr. Nebojsa Stevanovic where it was noted that Gruettner did not utilize any assistive device (Tr. 45), he ignores the multitude of records in which Gruettner was observed using an assistive device (Tr. 354, 372, 422, 499) and was advised that she was not safe walking without an assistive device (Tr. 387). The ALJ does not address the opinions of the State Agency physicians who opine that Gruettner has a medically determinable impairment, despite according these opinions significant weight in assessing her RFC. (Tr. 20, 31, 48-49.) Because it is unclear whether the ALJ considered the evidence contrary to his holding of no medically determinable impairment, the ALJ does not provide the requisite bridge between the evidence and his conclusion.

---

[2]Ataxic gait, or cerebellar gait, is defined as a "wide-based gait with lateral veering, unsteadiness, and irregularity of steps; often with a tendency to fall to one or other side, forward or backward." Stedmans Medical Dictionary, Cerebellar gait (28th ed. 2005).

[3]Romberg sign, or Romberg test, is defined as "when a patient, standing with feet approximated, becomes unsteady or much more unsteady with eyes closed. Open, it is a sign of proprioception loss." Stedmans, Romberg sign.

This error alone, however, does not warrant remand because the ALJ relied on an alternative holding that Gruettner's benign positional vertigo of unknown etiology was a severe impairment. (Tr. 46.) I disagree with Gruettner's position that the ALJ presumed her vertigo was not disabling before conducting any analysis and weighing the evidence. I see the ALJ's sentence that "in the alternative, [I] will also evaluate [Gruettner's] vertigo as a severe impairment, which is not disabling," as merely stating his conclusion prior to performing his analysis. It is common for a court to state its ruling in an introductory paragraph prior to giving its analysis. Gruettner has not shown that the ALJ was trying to force the evidence and testimony "into a foregone conclusion" rather than basing his conclusion on the evidence and testimony. *See Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). The ALJ gives reasons for his conclusion, which I will evaluate. Thus, I do not find the ALJ erred in this regard.

### 2.2 Weight Given to Treating Medical Provider

Gruettner argues the ALJ improperly weighed the opinion of her treating physician, Dr. Nayak. An ALJ must consider all medical opinions in the record, but the method of evaluation varies depending on the source. Generally, more weight is given to the medical opinions of treating sources. 20 C.F.R. § 404.1527(c)(2). If the opinion of a treating source is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, the opinion is given "controlling weight." *Id.* Even if the ALJ finds that the opinion is not entitled to controlling weight, he may not simply reject it. SSR 96-2p (rescinded effective March 27, 2017). Rather, if the ALJ finds that a treating source opinion does not meet the standard for controlling weight, he must evaluate the opinion's weight by considering a variety of factors, including the length, nature and extent of the claimant and physician's treatment

relationship; the degree to which the opinion is supported by the evidence; the opinion's consistency with the record as a whole; and whether the doctor is a specialist. 20 C.F.R. § 404.1527(c).

The ALJ must always give good reasons for the weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); SSR 96-2p. The ALJ must give reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. An ALJ can reject a treating physician's opinion only for reasons supported by substantial evidence in the record. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

Dr. Nayak completed a dizziness medical source statement on September 29, 2015. (Tr. 371-74.) At the time of his opinion, Dr. Nayak had treated Gruettner for approximately nine years. (Tr. 371.) Dr. Nayak diagnosed Gruettner with severe, recurrent vertigo and ataxic gait. (*Id.*) Dr. Nayak stated that Gruettner experienced seven dizziness episodes per week and thirty dizziness episodes per month. (*Id.*) He noted the episodes were chronic at present and occurred "all the time." (*Id.*) Dr. Nayak noted symptoms of photosensitivity, fatigue/exhaustion, and falling associated with her dizziness episodes. (Tr. 372.) Dr. Nayak opined that Gruettner had no ability to safely perform her activities of daily living because of her dizziness episodes. (*Id.*) Dr. Nayak opined that Gruettner would need more supervision at work than an unimpaired worker, could not work at heights, could not work with power machines, could not operate a motor vehicle, and could not take a bus alone. (*Id.*) He opined Gruettner was incapable of even low stress work and would be off task more than 25% of the time due to her symptoms interfering with her attention and concentration. (Tr. 373.) Dr. Nayak ultimately opined that Gruettner could not work and did not have "good days" and "bad days" because her condition was chronic. (*Id.*)

The ALJ assigned limited weight to Dr. Nayak's opinion, finding it "extreme and inconsistent with the longitudinal evidence of record." (Tr. 49.) The ALJ found that the record did not reflect dizziness that occurs "all the time," noting that in October 2012, Gruettner reported her symptoms as "off and on" and in September 2014, she reported her symptoms were better. (*Id.*) The ALJ further found Dr. Nayak's "off task" opinion an "exaggeration" as Gruettner testified that she shops online, maintains an email and Facebook account, and crochets, "activities which require a significant degree of concentration." (*Id.*) The ALJ found that Gruettner "admitted to tending to her personal cares, cooking, cleaning, shopping in stores, and driving," and although she testified that she was unable to perform many of those activities to date, the evidence did not reflect any significant deterioration in her condition over time. (*Id.*)

I find the ALJ erred in his consideration of Dr. Nayak's opinion. Contrary to the ALJ's finding, the record supports the chronic nature of Gruettner's vertigo. The ALJ's citation to Dr. Nayak's record from October 2012 where Gruettner stated that her vertigo had been "off and on" (Tr. 305) predates her alleged onset date. On September 25, 2014, Gruettner treated with Dr. Margo Sherman, who noted that Gruettner was "feeling better overall," that "some of the dizziness is better," and described the dizziness as "stable." (Tr. 365-66.) Gruettner testified that she saw Dr. Sherman a "couple of times" because she could not drive all the way to see Dr. Nayak at that time. (Tr. 524.) The records reflect Gruettner treated with Dr. Sherman five times between April and October 2014. (Tr. 338, 361, 363, 365, 367.)

However, the records of Gruettner's long-term treating physician, Dr. Nayak, support the chronic and debilitating nature of Gruettner's dizziness. In October 2013, Dr. Nayak noted that Gruettner described her symptoms as "very debilitating" and that she was unable to function or do

-8-

her activities of daily living. (Tr. 316.) Gruettner reported that even moving a little bit in bed makes her very uncomfortable and moving makes her feel off balance. (Tr. 317.) As a result of the vertigo, Gruettner had significant nausea and had lost fourteen to fifteen pounds since her last appointment. (*Id.*) When Gruettner began treating with Dr. Nayak again in January 2015, he noted that Gruettner was "overall doing poorly since I had last seen her" and had "significant recurrent symptoms of vertigo." (Tr. 346.) Gruettner reported significant nausea and anxiety issues. (*Id.*) Upon physical examination, Dr. Nayak noted that Gruettner had a wide-based gait and was notably unstable trying to stand from a seated position. (Tr. 347.)

In March 2015, Dr. Nayak certified that it was medically necessary for Gruettner to have skilled home health services because she was confined to her home because of residual weakness and severe vertigo. (Tr. 417.) In September 2015, Dr. Nayak noted that Gruettner experienced chronic issues with vertigo for many years and in her former job, she missed many days of work because of her vertigo symptoms. (Tr. 422.) Dr. Nayak noted that Gruettner was constantly walking with a walker to give her support and stabilize her gait and that "any movement" exacerbated her symptoms of vertigo. (*Id.*) Dr. Nayak stated that he completed Gruettner's disability form opining that she was presently unable to participate in any meaningful work because she was at high risk for falls and was chronically on benzodiazepines, which can contribute to sedation and confusion. (*Id.*)

Records from other treating sources in 2015 further substantiate her claims of chronic vertigo. The Aurora Visiting Nurses performing in-home PT indicated that Gruettner's dizziness got worse in the late morning and she could not sit unsupported for long or stand without swaying after several seconds. (Tr. 376.) Gruettner's walking was ataxic and she needed to hold on to furniture. (*Id.*) Gruettner was advised to use an assistive device. (*Id.*) The visiting nurses noted that Gruettner's

grooming utensils had to be placed within reach before she could complete her grooming activities and that she needed assistance putting on her undergarments. (Tr. 381.) Also, she could only walk with the supervision or assistance of another person at all times and needed assistance with her activities of daily living on a daily basis. (Tr. 382-83.)

Gruettner also treated with Dr. Alrefai, a neurologist, in June and November 2015. Dr. Alrefai noted that Gruettner's vertigo was "getting worse" over the years and that she ambulated with a walker. (Tr. 354.) Upon neurological examination, Dr. Alrefai noted that Gruettner's strength was normal in all extremities, but her gait was severely ataxic. (Tr. 356.) In November 2015, Dr. Alrefai noted that Gruettner continued to complain of severe disturbance of gait and needed to use a walker for all activities of daily living. (Tr. 499.) Gruettner complained of easy fatigability and intermittent numbness in both legs. (*Id.*) Again, neurological examination showed normal strength in all extremities; however, Gruettner demonstrated an extremely ataxic gait and a positive Romberg test. It was error for the ALJ to cite only to the two medical records favoring the denial of benefits and ignore this evidence contrary to his findings. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).

The ALJ also found Dr. Nayak's opinion regarding Gruettner's time "off task" due to her vertigo "an exaggeration" because of her ability to shop online, maintain an email account, maintain a Facebook account, and crochet. (Tr. 49.) But Gruettner testified that she spends between five to ten minutes a day on the computer and can crochet for only ten to fifteen minutes at a time. (Tr. 535-36.) This hardly shows a "significant degree of concentration," as the ALJ contends. (Tr. 49.)

The ALJ also assigned limited weight to Dr. Nayak's opinion on the basis of Gruettner's ability to tend to her personal care, cook, clean, shop, and drive. (*Id.*) The ALJ relies on Gruettner's

Adult Function Report, dated May 17, 2013, in which she indicated an ability to complete these tasks. (Tr. 247-55.) Gruettner testified that she has difficulties with all of these tasks, (Tr. 530-32), and while the ALJ acknowledged this testimony, stating that Gruettner testified "that she is unable to perform many of these activities to date," he found that "the evidence does not reflect any significant deterioration in her condition over time" (Tr. 49). In other words, the ALJ concluded that if Gruettner stated she could complete these tasks in 2013, there is no reason she should not be able to complete them in 2016 (the date of the hearing), because her condition has not deteriorated. But the record does support a decline in Gruettner's condition. In May 2014, Dr. Sherman noted that Gruettner stated her symptoms were continually getting worse and she experienced vertigo on an almost continual basis. (Tr. 361.) Dr. Alrefai similarly noted in both June and November 2015 that Gruettner's symptoms continued to worsen. (Tr. 354, 501.) Dr. Alrefai had recommended doing an MRI, which Gruettner had been unable to do because of claustrophobia and panic attacks. (Tr. 523.) By November 2015, Dr. Alrefai recommended she be sedated so the MRI could be performed. (Tr. 501.) Although Gruettner explained the MRI under sedation was not completed due to a mix up with her pre-procedure instructions (Tr. 523), it seems Dr. Alrefai was concerned about trying to get to the source of her worsening symptoms (Tr. 356-57). For all of these reasons, the ALJ erred in his consideration of Dr. Nayak's opinion and must reconsider the opinion and all of the relevant evidence on remand.

  2.3  Assessment of Gruettner's Subjective Complaints

Finally, Gruettner argues the ALJ erred in assessing her subjective complaints. As an initial matter, the parties dispute whether SSR 96-7p or SSR 16-3p applies to the ALJ's evaluation of Gruettner's subjective complaints. On March 28, 2016, SSR 16-3p became effective and issued new

-11-

guidance regarding the evaluation of a disability claimant's statements about the intensity, persistence, and limiting effects of symptoms. *See* SSR 16-3p, 2016 WL 1237954 (Mar. 28, 2016). Under SSR 16-3p, an ALJ now assesses a claimant's subjective symptoms rather than assessing her "credibility." Gruettner contends that the ALJ's failed to properly evaluate her subjective complaints in light of SSR 96-8p and SSR 16-3p. (Pl.'s Br. at 16.) The Commissioner contends that SSR 16-3p is not retroactive and that the ALJ's analysis was proper under the ruling that was controlling at the time the decision was issued. Courts in this circuit have divided on whether SSR 16-3p is retroactive. *See Fernandez v. Berryhill*, No. 2:16-CV-358-PRC, 2017 WL 4325304, at *5 (N.D. Ind. Sept. 29, 2017) ("However, SSR 16-3p is not retroactive; therefore, the 'credibility determination' in the ALJ's decision is governed by the standard of SSR 96-7p."); *Shank v. Barryhill*, No. 116CV01856JMSMJD, 2017 WL 2951556, at *3 n.3 (S.D. Ind. June 6, 2017), *report and recommendation adopted*, No. 116CV01856JMSMJD, 2017 WL 2926013 (S.D. Ind. July 7, 2017) (finding that SSR 16-3p is not retroactive); *Mendenhall v. Colvin*, No. 3:14-CV-3389, 2016 WL 4250214, at *3 (C.D. Ill. Aug. 10, 2016) (SSR 16-3p applies retroactively); *Lasher v. Berryhill*, No. 16-CV-267-WMC, 2018 WL 3425289, at *5 and n.6 (W.D. Wis. July 16, 2018) (while noting that courts "have gone both ways on the retroactive application of SSR 16-3p," found SSR 16-3p applied retroactively based on the Seventh Circuit's statement in *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) that the "change in wording is meant to clarify").

Because this case must be remanded on other grounds and because the new ruling will apply on remand, I need not determine whether SSR 16-3p applies retroactively. On remand, the ALJ must determine subjective symptoms in accordance with the new ruling. However, to give the ALJ some guidance on remand, I will address several errors in the ALJ's assessment of Gruettner's subjective

complaints. The ALJ finds that Dr. Nayak "acquiesced" to Gruettner's request for a prescription for a walker and for in-home PT. (Tr. 48.) There is nothing in Dr. Nayak's records to indicate that he "acquiesced" (i.e., that he was reluctantly accepting these requests). He noted that she is at high risk for falls due to her vertigo (Tr. 422) and certified that Gruettner needed in-home care due to her residual weakness and severe vertigo (Tr. 417).

The ALJ found that Dr. Nayak's statement that Gruettner was confined to her home due to weakness and vertigo was inaccurate because her physical examination revealed 5/5 strength, intact muscle tone, and the evidence did not reflect complaints of physical fatigue. The ALJ further found the fact that Gruettner attended medical appointments without complaints of difficulty leaving her home belies Dr. Nayak's statement. (Tr. 48.) But Dr. Nayak did note in early 2015 that Gruettner appeared "notably unstable and weak" (Tr. 346) and she reported fatigue and insomnia to Dr. Sherman (Tr. 361). Gruettner also testified that she has lost strength in her legs and it had gotten worse over the years. (Tr. 549.) Further, I do not find Gruettner's leaving the house to attend doctor appointments compelling evidence that her vertigo is not as severe as she alleges. Someone suffering from disabling symptoms is highly motivated to seek medical treatment. And unlike the availability of in-house PT, it is unlikely Dr. Nayak or her other medical providers would conduct house calls. Gruettner testified that she rarely leaves her house (Tr. 528) and drove twenty-seven miles in the past year (Tr. 545). Gruettner's sister stated that Gruettner's neighbors drive her to her doctor appointments (Tr. 278), which Gruettner's neighbors confirmed (Tr. 281).

The ALJ fails to cite to any of the statements provided by Gruettner's sister and neighbors, despite Gruettner's testimony that her neighbors were providing significant daily assistance and thus likely had pertinent information regarding her condition. (Tr. 545-46.) Further, the three statements

-13-

provided are consistent with Gruettner's testimony regarding the assistance she receives from her neighbors and the worsening of her condition. (Tr. 278-82.) The ALJ should evaluate evidence from "non-medical sources," considering such factors as the nature and extent of the relationship between the source and individual, the degree to which the source presents relevant evidence to support his or her opinion, and whether the opinion is consistent with other evidence. *See* SSR 06-03p (rescinded effective March 27, 2017).

The ALJ also again cites to the two records (October 2012 and September 2014) where her vertigo had improved, and the activities of daily living reported in her Function Report, as evidence that her vertigo symptoms are not as severe as alleged. (Tr. 48.) The ALJ again stated that although Gruettner testified to greater limitations, the medical evidence did not reflect any significant deterioration in her condition. For the same reasons I rejected the ALJ's rationale in using this evidence to discount Dr. Nayak's opinion, the ALJ should reconsider the evidence on remand in assessing Gruettner's subjective complaints.

## CONCLUSION

Gruettner alleges that the ALJ erred in finding that she had no medically determinable impairment; by improperly weighing the opinion of her treating physician, Dr. Nayak; and by improperly assessing her subjective complaints. I agree the ALJ erred and must re-examine these issues on remand.

Although Gruettner requests that this Court award her benefits in lieu of remanding the case, an award of benefits is appropriate only "if all factual issues have been resolved and the record supports a finding of disability." *Briscoe ex rel Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005). Here, there are unresolved issues and this is not a case where the "record supports only one

conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Therefore, the case is appropriate for remand pursuant to 42 U.S.C. § 405(g), sentence four.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 24th day of August, 2018.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge